UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHENGHUI DONG,

        Petitioner,

        v.

MARCOS CHARLES et al.,[1]

        Respondents.

26-CV-85-LJV
DECISION & ORDER

---

More than 23 years ago—on April 15, 2003—an order of removal was entered

against the petitioner, Shenghui Dong.  Docket Item 1 ¶ 13.  That order of removal

became administratively final in July 2004 when the Board of Immigration Appeals

("BIA") dismissed Dong's appeal.  *Id.* ¶ 14.  But Dong was never removed.  In fact, for

the next 21 years, nothing happened.

Dong remained free and built a productive, law-abiding life in the United States.

He married a lawful permanent resident in 2009, and together they had four children—all

U.S. citizens.  *Id.* ¶ 22.  He owned and operated a restaurant.  *Id.* ¶ 23.  He paid taxes.

---

[1] The petition named, in their official capacities, five respondents: then-Attorney General Pamela Bondi; United States Immigration and Customs Enforcement ("ICE") Acting Executive Associate Director, Enforcement and Removal Operations, Marcos Charles; Acting ICE Director Todd M. Lyons; then-Secretary of Homeland Security Kristi Noem; and Buffalo Federal Detention Facility Warden Michael T. Phillips.  *See* Docket Item 1.  Under Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin and Acting Attorney General Todd Blanche are automatically substituted as respondents for Noem and Bondi.  The Clerk of the Court shall update the case caption accordingly.  For ease of reference, this Court will refer to the respondents as "the government" throughout this decision and order.

*Id.* ¶ 24.  He contributed to his community much like his friends and neighbors did.  *See generally id.* ¶¶ 21-25, 47-50.

All that changed on September 24, 2025, when Dong reported to the Department of Homeland Security, United States Immigration and Customs Enforcement ("ICE")— just as he was supposed to—and was arrested "without warning."  *Id.* ¶ 26.  He has remained in custody ever since and is "currently detained at the Buffalo Federal Detention Facility."  *Id.* ¶ 5.

Dong commenced this action earlier this year by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  Docket Item 1.  In that petition, he argues that his current detention "flagrantly violate[s]" the relevant statutory scheme and his constitutional rights.  *See generally id.*  After the government moved to dismiss Dong's petition, Docket Item 10, Dong responded, Docket item 11.  Then, at this Court's request, the government provided an update on the status of its efforts to remove Dong.  *See* Docket Item 13.

For the reasons that follow, Dong's petition, Docket Item 1, is GRANTED; the government's motion to dismiss, Docket Item 10, is DENIED; and Dong shall be released immediately.

## BACKGROUND[2]

Dong is a native and citizen of China.  Docket Item 1 ¶ 6.  He "entered the United States in 1995, fleeing political persecution in China."  *Id.* ¶ 12.  Dong's father "filed an

---

[2] The following facts are largely taken from the petition, Docket Item 1.  Where noted, the Court also refers to records submitted by the government, Docket Item 10-3;

application for political asylum," *id.*, and Dong "derivatively" sought asylum through his father's application, Docket Item 10-3 at 1.[3]  But that application was denied by an immigration judge on April 15, 2003, Docket Item 1 ¶ 13, and on July 21, 2004, the BIA dismissed the appeal, *id.* ¶ 14; *see also* Docket Item 10-3 at 9.

Dong nevertheless remained in the United States without any issues.  *See generally* Docket Item 1 ¶¶ 21-25.  In fact, since he arrived here more than 30 years ago, he has "built a life, family, and community in the United States."  *Id.* ¶ 21.  As noted above, he married a lawful permanent resident in 2009, with whom he has four children who all are U.S. citizens.  *Id.* ¶ 22.  He "has maintained continuous, lawful employment throughout his time in the United States" and has "filed taxes for over 20 years."  *Id.* ¶¶ 23-24.  Immediately before his arrest, "he was working at a restaurant he owned in Albany, New York."  *Id.* ¶ 23.

Nevertheless, in September of last year "ICE arrested . . . Dong without warning at [an] ICE facility when he went to report."  *Id.* ¶ 26.  The government says that this was done "to effectuate his deportation order"—issued more than twenty years ago—and that it intends to deport Dong to China.  *See* Docket Item 10-2 ¶¶ 9, 12.  And the government says that on October 31, 2025—more than a month after Dong was arrested—"a travel document request for [Dong]" was sent to ICE Enforcement and Removal Operations ("ERO") headquarters.  *Id.* ¶ 10.

---

the declaration of ICE Deportation Officer Sean McDonald, Docket Item 10-2; and the government's status update, Docket Item 13.

[3] Page numbers in docket citations refer to ECF pagination.

The government also says that on December 29, 2025, ERO headquarters "advised" that Dong's "case is pending identification verification" by the Chinese government. *Id.* ¶ 11. Once "the [Chinese] government is able to verify [Dong]'s identity," the government says, "ERO [h]eadquarters will then be able to present the travel document request to the [Chinese] embassy in Washington, D.C.[,] for the issuance of a travel document for [Dong]'s removal to [China]." *Id.* But "no further efforts to remove [Dong] can be completed until" his identity is verified, the government says. Docket Item 13.

As of April 30, 2026—the date of its status update—"the government's request to verify [Dong]'s identity remains pending." Docket Item 13. In the meantime, Dong sits in a detention facility.

## LEGAL PRINCIPLES

### I.  SECTION 2241 PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in habeas courts to 'hear and determine the

4

facts, and dispose of the matter as law and justice require.'" *Id.* (some alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

## II.  MOTION TO DISMISS

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Dong argues that because his detention violates both the Due Process Clause of the Fifth Amendment to the United States Constitution and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), he is entitled either to immediate release or to a bond hearing.  *See* Docket Item 1 ¶¶ 29-45; *id.* at 17.  The government has moved to dismiss Dong's petition, arguing that Dong is lawfully detained under section 1231.  *See* Docket Item 10-1 at 4.

## I.  DETENTION UNDER SECTION 1231

Because Dong is a noncitizen with a final order of removal, his detention is governed by 8 U.S.C. § 1231.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 542-44

(2021).  "Section 1231 provides that during a specified ninety-day removal period, 'the

Attorney General shall detain the [noncitizen].'"  *Diallo v. Joyce*, 817 F. Supp. 3d 202,

204 (S.D.N.Y. Dec. 23, 2025) (quoting 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A)); *see also*

*Guzman Chavez*, 594 U.S. at 528 ("During the removal period, detention is

mandatory.").  Under section 1231's explicit terms, that period begins "on the latest" of

three possible dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B); *see also Hechavarria v. Sessions*, 891 F.3d 49, 54-55 (2d Cir.

2018), *as amended* (May 22, 2018).

"If the [noncitizen] does not leave or is not removed within the removal period,

the [noncitizen], pending removal, shall be subject to supervision under regulations

prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  In "normal circumstances,

after the ninety-day removal period ends, a person is required to be released from

detention under supervision."  *Diallo*, 817 F. Supp. 3d at 204.  Under the relevant

federal regulations, "that person would be released with an order of supervision, with

regulations specifying conditions under which they can be re-detained."  *Id.* (citing 8

C.F.R. § 241.4).[4]

---

[4] The record does not suggest that Dong was ever detained or subject to an order of supervision before September 2025.

But the government is not required to release all noncitizens after the removal period ends.  More specifically, "[a]fter the 90-day removal period expires, section 1231(a)(6) authorizes the detention of three classes of persons 'beyond the removal period': noncitizens who are (1) inadmissible, (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal."  *Zhu v. Genalo*, 798 F. Supp. 3d 400, 407 (S.D.N.Y. 2025) (quoting 8 U.S.C. § 1231(a)(6)).

As is immediately clear, that statute "fails to specify *how long* the Attorney General can continue detention beyond the removal period."  *Lin v. United States*, 2007 WL 951618, at *2 (S.D. Tex. Mar. 28, 2007); *see also Qasemi v. Kurzdorfer*, 2025 WL 2938607, at *3 (W.D.N.Y. Oct. 16, 2025) ("By its plain language, [section 1231(a)(6)] does not appear to impose any limitation on the length of a[ noncitizen]'s detention.").  And because a "statute permitting indefinite detention of a[ noncitizen] would raise a serious constitutional problem," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), the Supreme Court has provided guidance for courts addressing cases that involve detention under section 1231(a)(6).  The Court turns now to that guidance.

## II.  *ZADVYDAS*

In *Zadvydas,* "the Supreme Court interpreted [section] 1231(a)(6) narrowly to avoid the possible constitutional problems with indefinite detention."  *Qasemi*, 2025 WL 2938607, at *3.  More specifically, the Court held that section 1231(a)(6), "read in light of the Constitution's demands, limits a[ noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United

7

States." *Zadvydas*, 533 U.S. at 689; *see also Lema v. Rhoney*, 2026 WL 380402, at *2 (W.D.N.Y. Feb. 11, 2026) (Wolford, C.J.) ("In *Zadvydas*, the Supreme Court read an implicit limitation into [section] 1231(a)(6)." (citation and internal quotation marks omitted)). "This limitation is linked to the statute's 'basic purpose,' which is to 'assure the [noncitizen]'s presence at the moment of removal.'" *Qasemi*, 2025 WL 2938607, at *3 (quoting *Zadvydas*, 533 U.S. at 699 (alteration omitted)).

"The *Zadvydas* court also provided a framework under which habeas courts are to review claims challenging continued detention under [section] 1231(a)(6)." *Id.* In doing so, "[t]he *Zadvydas* Court . . . adopted a 6-month 'presumptively reasonable period of detention,' and instructed that 'after this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing.'" *Lema*, 2026 WL 380402, at *2 (quoting *Zadvydas*, 533 U.S. at 701) (alteration omitted).

"In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed [noncitizens], and specific assurances from the target country regarding its willingness to accept a[ noncitizen]." *Hassoun v. Sessions*, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019). And when conducting that analysis, courts "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive . . . efforts to enforce this complex statute, and the

Nation's need to speak with one voice in immigration matters." *Zadvydas*, 533 U.S. at 700 (citation and internal quotation marks omitted).

"The mere passage of time beyond the six-month presumptively reasonable period does not satisfy [the petitioner's] burden under *Zadvydas*." *Lorenzo v. Barr*, 2021 WL 84283, at *6 (W.D.N.Y. Jan. 11, 2021). But at the same time, as the length of detention grows, "what counts as the 'reasonably foreseeable future' conversely" shrinks. *Zadvydas*, 533 U.S. at 701. "In effect, the parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at *4. "Thus, as time passes, the mere existence of possible avenues for removal becomes insufficient to justify further detention; some evidence of progress is required." *Id.* (collecting cases).

## III. APPLYING *ZADVYDAS*

With those principles in mind, the Court now turns to the facts of Dong's detention and the government's efforts to remove him. Because Dong now has been detained for more than six months,[5] *see* Docket Item 1 ¶¶ 5, 26, he "has surmounted

---

[5] The Court notes that Dong commenced this action less than six months after his detention began, *see* Docket Item 1 ¶¶ 5, 26, and that other courts—including some in this district—have concluded that for a petitioner to bring a viable *Zadvydas* claim, six months of detention must have elapsed *at the time of filing*. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Th[e] six-month period . . . must have expired at the time [petitioner]'s [section] 2241 petition was filed in order to state a claim under *Zadvydas*."); *Dao v. Bondi*, 2025 WL 1005579, at *2 (W.D.N.Y. Mar. 26, 2025) ("[F]ederal courts generally hold that the six-month post-removal period must have expired at the time the detainee's 2241 petition was filed in order to state a claim under *Zadvydas*." (alteration, citation, and internal quotation marks omitted)); *Loachamin v. Kurzdorfer*, 792 F. Supp. 3d 353, 363 (W.D.N.Y. 2025) (same). Other courts, however, have rejected the argument that a court is precluded from reviewing a petition raising a *Zadvydas* claim when the petition is filed prior to six months of detention. *See Zhu v. Noem*, 2025 WL 4710076, at *8 n.4 (S.D. Tex. Dec. 23, 2025) ("[T]he [c]ourt also rejects any argument that [p]etitioner's claim should be dismissed on the ground that it was brought prior to the conclusion of the six-month presumptively reasonable period."); *Lee v. Crawford*, 2026 WL 745263, at *3-4 (E.D. Va. Feb. 27, 2026) (noting that "[a]lthough

the first of *Zadvydas*'s hurdles," *Hassoun*, 2019 WL 78984, at \*4.  The question thus

becomes whether he has provided "good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.

And he has.

---

the [p]etition may have been filed before the six-month mark, the [c]ourt's review is not frozen in time as of the date of filing"), *report and recommendation adopted*, 2026 WL 738951 (E.D. Va. Mar. 16, 2026).

Because the former approach accomplishes nothing more than forcing petitioners to take another step in the process, this Court declines to read such a requirement into *Zadvydas*.  As one district court aptly observed, "[t]he alternative would be to dismiss the petition, only for [the p]etitioner to re-file and pay another court-filing fee."  *Quang Minh Lien v. Sessions*, 2018 WL 4853339, at \*4 n.2 (D. Colo. Oct. 5, 2018) (reviewing habeas petition filed "before the expiration of the presumptively reasonable" six months of detention).  Adding red tape to an already complicated system is needlessly inefficient—especially when a petitioner's freedom is at stake.

Moreover, if a detained non-citizen can bring a *Zadvydas* petition only after he or she has been detained for six months, then the government could do an end run to avoid review by releasing noncitizens just before six months of detention and then immediately re-detaining them.  And that certainly would be at odds with the Supreme Court's concerns about "[a] statute permitting indefinite detention."  *Zadvydas*, 533 U.S. at 690; *see also Chen v. Holder*, 2015 WL 13236635, at \*2 (W.D. La. Nov. 20, 2015) ("Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, . . . while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.").

Finally, even if there were such a six-month rule, several district courts have concluded that *Zadvydas* does not preclude review of a petition before six months of detention.  *See, e.g.*, *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706-07 (S.D. Tex. 2020) (the "six-month presumption is not a bright line,  . . . and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits"); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025) ("[N]othing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed."); *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (*Zadvydas* is not "a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed").

For all those reasons, this Court will address Dong's *Zadvydas* argument based on the time that he has been in custody, not the date when his petition was filed.

In the petition, Dong argues that he has met his initial burden for three reasons. First, he says that "[t]he sheer passage of time" since his order of removal became administratively final more than twenty years ago "creates an overwhelming presumption that removal is not reasonably foreseeable." Docket Item 1 ¶ 42. Next, he cites China's practice of consistently "refus[ing] to accept its nationals subject to removal from the United States, particularly those who sought political asylum." *Id.* And finally, he says, the government "has not obtained and cannot obtain travel documents from China for" his removal. *Id.*

Merely demonstrating "that the government has been unable to obtain a travel document to date" does not satisfy a petitioner's burden under *Zadvydas*, *see Callender v. Shanahan*, 281 F. Supp. 3d 428, 434-35 (S.D.N.Y. 2017), but Dong has established more than that. In fact, not only has the government "been unable to obtain a travel document to date," *id.*, but it admits that it cannot even request a travel document until after the identity verification process is complete, *see* Docket Item 10-2 ¶ 11 (noting that ERO Headquarters needs the Chinese government to first "verify [Dong]'s identity" before it is "able to present the travel document request to the [Chinese] embassy"). And that identity verification request has been pending for at least five months or so[6] with no apparent progress.

Because the government has not obtained any of the materials necessary for Dong's removal—such as a scheduled removal, a travel document, or even verification

---

[6] The government does not state precisely when the identity verification request was made, but it likely was sent at some time between October 31, 2025, when a travel document request was sent to ERO headquarters, Docket Item 10-2 ¶ 10, and December 29, 2025, when ERO headquarters advised that Dong's "case is pending identification verification," *id.* ¶ 11.

11

of his identity—this Court is "left to guess whether [Dong's] deportation might occur in ten days, ten months, or ten years." *See Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Under these circumstances, Dong easily clears the low bar needed to shift the burden back to the government. *See Yuan v. Anda-Ybarra*, 2026 WL 837021, at *1-2 (D.N.M. Mar. 26, 2026) (petitioner had "met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future" when the government had not submitted "proof of a travel document, . . . proof of acceptance by China, [or] proof of a scheduled removal"); *see also Sahin v. Casey*, 2026 WL 800558, at *2 (S.D. Cal. Mar. 23, 2026) ("The 'good reason to believe' standard is not a very high bar." (quoting *Freeman v. Watkins*, 2009 WL 10714999, at *3 (S.D. Tex. Dec. 22, 2009))).

In attempting to rebut Dong's prima facie showing, the government points to the pending identification verification request, Docket Item 10-1 at 3, and the fact that "a chartered removal flight to" China occurred earlier this year, Docket Item 13. But as the government itself admits, the verification request is just a first step: once completed, the government still will need to "present [a] travel document request to the" Chinese embassy. Docket Item 10-2 ¶ 11. What is more, the government provides no evidence of either a "repatriation agreement" with China or "specific assurances" from the Chinese government about "its willingness to accept [Dong]," *Hassoun*, 2019 WL 78984, at *4, nor does it say whether it may try to remove Dong to a country other than China. And the fact that others may have been removed to China sometime in the past few months says little about when—or even whether—Dong might be removed.

12

In light of the lack of progress that has been made since Dong was arrested last fall, the government's proffered evidence and explanation is insufficient to rebut Dong's showing. *See Chen v. English*, 2026 WL 1113371, at \*3 (N.D. Ind. Apr. 24, 2026) (taking into account "China's historical reluctance to accept individuals for removal," government did not rebut petitioner's showing "when travel documents have not been obtained six months after their request" and there was no indication of "negotiations that would merit particular deference"); *Yu v. Noem*, 2026 WL 352840, at \*3 (W.D. Mich. Feb. 9, 2026) (government did not rebut petitioner's showing where travel document request had been sent to Chinese embassy but no response had been received). Dong therefore has demonstrated that he is entitled to relief under *Zadvydas*, the government's motion to dismiss—premised on its argument that Dong had not raised a viable claim under *Zadvydas*—is denied, and Dong is entitled to his immediate release.[7] *See Trejo v. Warden of ERO El Paso East Montana*, 807 F. Supp. 3d 697, 712 (W.D. Tex. 2025) ("The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision."); *see also Diallo*, 817 F. Supp. 3d at 210 ("[T]he 'typical remedy' for 'unlawful executive detention is, of course, release.'" (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (alteration omitted)); *Lema*, 2026 WL 380402, at \*2 (ordering immediate release of petitioner who brought successful *Zadvydas* claim).

---

[7] Because Dong is entitled to his release under *Zadvydas*, the Court need not address the other arguments raised in his petition.

13

## CONCLUSION

For the reasons stated above, Dong's petition, Docket Item 1, is GRANTED, and the government's motion to dismiss, Docket Item 10, is DENIED.  **Within 24 hours** of the issuance of this order, Dong shall be released from custody.  The respondents may, in their discretion, impose conditions of release.  On or before **May 28, 2026**, the government shall file an affidavit attesting to Dong's release.


SO ORDERED.

Dated:   May 26, 2026
         Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE